UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**DEBRA S.W.,**[1]

        Plaintiff,

v.

**COMMISSIONER OF SOCIAL SECURITY**,

        Defendant.

Civ. No. 3:20-cv-01241-MO

**OPINION & ORDER**

MOSMAN, District Judge:

This matter comes before me on Plaintiff Debra S.W.'s Complaint [ECF 1] against Defendant Commissioner of the Social Security Administration. For the reasons given below, I AFFIRM the Commissioner's decision and DISMISS this case.

## BACKGROUND

On February 7, 2017, Plaintiff filed a Title II application for disability insurance benefits due to an alleged disability beginning on December 31, 2011, Tr. [ECF 9] at 15. The application was denied initially and upon reconsideration and, at Plaintiff's request, a hearing was held before an Administrative Law Judge ("ALJ") on June 5, 2019. Tr. 32–56. At her hearing, Plaintiff amended her alleged onset date

---

[1] In the interest of privacy, this opinion uses only first name and the initial of the last name of the non-governmental party in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

of disability from December 31, 2011, to January 22, 2016. Tr. 35. On January 13, 2019, the ALJ issued a decision finding Plaintiff not disabled. Tr. 12.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r, Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

> The five-steps are: (1) Is the claimant presently working in a substantially gainful activity?  (2) Is the claimant's impairment severe?  (3) Does the impairment meet or equal one of a list of specific impairments described in the regulations?  (4) Is the claimant able to perform any work that he or she has done in the past? and (5) Are there significant numbers of jobs in the national economy that the claimant can perform?

*Id.* at 724–25; *see also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Bustamante*, 262 F.3d at 953. The Commissioner bears the burden of proof at step five. *Id.* at 953–54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the

claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953–54.

## THE ALJ'S FINDINGS

The ALJ performed the sequential analysis. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her amended alleged onset date on January 22, 2016, through the date of her last insured date on March 31, 2018. Tr. 17.

At step two, the ALJ found that Plaintiff had the following medically determinable impairments: degenerative disc disease and psoriasis. Tr. 17. The ALJ did not find any severe mental impairments. *Id.* At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 18.

The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform "medium work" as "defined in 20 CFR 404.1567(c) except the claimant could occasionally climb ladders, ropes, and scaffolds . . . balance, stoop, kneel, crouch, and crawl." Tr. 19.

At step four, the ALJ determined that Plaintiff had past relevant work as a bus driver. Tr. 25. The ALJ found at step five that Plaintiff could also perform other jobs that exist in significant numbers in the national economy, specifically that Plaintiff could perform as a kitchen helper, janitor, or laundry worker. Tr. 26. Therefore, the ALJ determined that Plaintiff was not disabled. *Id.*

## LEGAL STANDARD

The Commissioner's decision must be affirmed if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. *Batson v. Comm'r, Soc. Sec.*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). When reviewing the Commissioner's alleged errors, there must be consideration of "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).

When the evidence before the ALJ is subject to more than one rational interpretation, there is deference to the ALJ's conclusion. *Batson*, 359 F.3d at 1198. A reviewing court, however, cannot affirm the Commissioner's decision on a ground that the agency did not invoke in making its decision. *Stout v. Comm'r, Soc. Sec.*, 454 F.3d 1050, 1054 (9th Cir. 2006). Finally, a court may not reverse an ALJ's decision on account of an error that is harmless. *Id.* at 1055–56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## DISCUSSION

Plaintiff asserts the ALJ erred by improperly (1) discounting Plaintiff's subjective symptom testimony; (2) rejecting medical opinion evidence; (3) undermining lay witness interpretations; and (4) conducting an improper vocational analysis for applicable jobs given her condition. I address each issue in turn.

### I.   Subjective Symptom Testimony

Plaintiff alleges that the ALJ discounted her testimony "after engaging in a recitation of the medical evidence, with no specificity to what testimony was discredited or why." Pl.'s Br. [ECF 10] at 16. To determine whether a claimant's testimony is credible, an ALJ must perform a two-stage analysis. 20 C.F.R. § 416.929. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). At the second stage of the credibility analysis, absent evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of symptoms. *Id.*

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* An ALJ may use "ordinary techniques of credibility evaluation" in assessing a claimant's credibility, such as prior inconsistent statements concerning the symptoms, testimony that appears less than candid, unexplained failure to seek treatment or follow a prescribed course of treatment, or a claimant's daily activities. *Id.* The ALJ may also rely on "other evidence" factors such as activities of daily living ("ADLs"), claimant's reported descriptions of symptoms, and their treatment history in assessing a plaintiff's testimony. *See* 20 C.F.R. §§ 404.1529(c)(3)(i)–(vii), 416.929(c)(3)(i)–(vii).

### A. Plaintiff's Testimony

Plaintiff is a fifty-five-year-old individual that lives with her mother and grandchild. Tr. 37. Before her alleged disability, Plaintiff worked as a bus driver for 27 years before she was terminated in 2011. Tr. 39–40. At her hearing, Plaintiff testified that the reason for her termination was due to an "inappropriate conversation" with a monitor on a bus. Tr. 42. After this position, Plaintiff worked a variety of part-time positions including as a security guard during high school football games and as a gym instructor at a women's health club. Tr. 41.

Plaintiff alleges a series of physical limitations that began on September 16, 2013, when Plaintiff fractured her ankles after a fall and was treated at a nearby hospital. Tr. 637. She received treatment for her injury and had a follow up visit the next month. Tr. 326. On May 28, 2015, Plaintiff again went to the hospital after experiencing ankle pain. Tr. 284, 642. On March 17, 2017, doctors determined that Plaintiff had bilateral ankle edema. Tr. 523. On February 21, 2018, Plaintiff's condition had developed into psoriasis. Tr. 549.

To treat her psoriasis, Plaintiff was prescribed Humira which she testified made her condition "work better" and afterwards her condition had "not been too awful bad." Tr. 42, 48. When asked how long she had the condition, Plaintiff reported that "I don't know really, honestly." *Id.* When asked by the ALJ if her psoriasis affected her ability to work, Plaintiff responded that it was "just the embarrassment" that made work difficult. Tr. 48.

Plaintiff also described her daily activities as which included routine house cleaning, reading books and grocery shopping. Tr. 45–47. Plaintiff testified she sometimes suffers from shoulder problems from "at least early 2018." Tr. 48. When asked if she had trouble sitting down Plaintiff responded that "sitting for a long period of time, [sic] I don't know…honestly… I don't know what to say." Tr. 43.

ALJ concluded the hearing by asking Plaintiff is there "anything else you want to tell us about the past couple years that's been keeping you from working?" to which the Plaintiff responded, "I don't think so, I don't know." Tr. 49.

### B.  ALJ Decision

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 19–20. The ALJ made this determination after assessing Plaintiff's testimony and finding inconsistencies between her statements, a failure to seek appropriate treatment, and a description of severity inconsistent with the medical record.

The ALJ noted that Plaintiff was able to control her conditions with medication. Tr. 20. "Impairments that can be controlled effectively with medication are not disabling." *Warre v. Comm'r, Soc. Sec.*, 439 F.3d 1001, 1006 (9th Cir. 2006). An ALJ may rely on "instances of improvement" in the medical record "as a basis for concluding a claimant is capable of working" as long as those instances are not

"isolated." *Garrison v. Colvin,* 759 F.3d 995, 1017 (9th Cir. 2014). Plaintiff herself testified she had significant improvement in her psoriasis and that the pain was not "awful" after taking Humira. Tr. 48. In April 2017, Plaintiff sought a physical consultative examination with Dr. Darrell Kauffman. Tr. 523. Dr. Kauffman concluded that Plaintiff's "psoriasis appears to be for the most part cleared up" and that it "stays cleared up with Humira." Tr. 524. Because Plaintiff herself testified that treatment is successfully controlling her symptoms and her physicians support this interpretation, the ALJ did not err in his conclusion.

The ALJ explained that "when viewed as a whole" Plaintiff's medical record "shows the claimant's medical treatment was sporadic, routine, conservative, and not indicative of a chronic or disabling medical condition." Tr. 21. "[I]n assessing a claimant's credibility, the ALJ may properly rely on unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Molina v. Astrue,* 674 F.3d 1104, 1113 (9th Cir. 2012). Dr. Kauffman noted in his consultative examination that despite "complain[t]s of right shoulder pain [Plaintiff] denied a specific diagnosis for her right shoulder and has had no treatment problems." Tr. 524. Dr. Kauffman also noted that Plaintiff had not gone to physical therapy to treat her alleged physical problems. *Id.* Because Plaintiff allegedly had her condition for years but failed to adequately treat her condition, the ALJ was correct to discount her testimony.

Finally, Plaintiff argues that the ALJ "exhibited clear error" regarding his analysis of an April 2016 physical evaluation Plaintiff underwent after experiencing

spasmic back pain. Pl.'s Br. [ECF 10] at 16. Specifically, Plaintiff contests the ALJ's conclusion that "muscle spasms and subject tenderness to palpation are not objective evidence of physical symptoms or limitations so severe as to be disabling." Tr. 20. "Objective medical evidence . . . is a useful indicator to assist in making reasonable conclusions about the intensity and persistence of symptoms and the effect those symptoms, such as pain, may have on the ability to work." 20 C.F.R § 404.1529(c)(2). However, even if it was not considered "objective" evidence "an ALJ may not disregard a claimant's testimony solely because it is not substantiated affirmatively by objective medical evidence." *Trevizo v. Berryhill*, 871 F.3d 664, 679 (9th Cir. 2017).

During her April 2016 examination, Plaintiff was assessed by Dr. Ginney Denney as having cervicalgia and muscle spasms and was prescribed Tizanidine, a muscle relaxer, for use as needed after complaining of severe back pain. Tr. 287–89. Dr. Denney noted that Plaintiff was not taking any medication for her back pain before this visit but did not demonstrate any other limitations or restrictions. This lack of pain treatment was because Plaintiff had just recovered from bariatric surgery and could not take pain medication while recovering. Tr. 540. As discussed above, pain treatment did help alleviate Plaintiff's symptoms despite her inconsistency in receiving treatment. Finally, the record does not indicate further instances of cervicalgia after April 2016. Therefore, the ALJ considered Plaintiff's condition and adequately demonstrated it was not disabling.

In sum, I conclude that the ALJ gave legally sufficient and supported reasons for discounting Plaintiff's subjective testimony concerning her physical and mental

health symptoms through her discussion of treatment and refusal to seek treatment when appropriate.

## II. Medical Opinion Testimony

Plaintiff alleges the ALJ failed to identify a legally sufficient basis to reject the examining medical opinions of Drs. Manuel Gomes and Winifred Ju. When evaluating the intensity and persistence of a plaintiff's symptoms, the ALJ "consider[s] all of the available evidence from [] medical sources and nonmedical sources about how [the] symptoms affect [the plaintiff]." 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1). The ALJ is responsible for resolving conflicts in the medical record. *Carmickle v. Comm'r, Soc. Sec.*, 533 F.3d 1155, 1164 (9th Cir. 2008).[2] "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant . . . ." *Turner v. Comm'r, Soc. Sec.*, 613 F.3d 1217, 1222 (9th Cir. 2010). An ALJ may reject the uncontradicted medical opinion of a treating or examining physician only for "clear and convincing" reasons supported by substantial evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). An ALJ may reject the contradicted opinion of a treating or examining doctor by providing "specific and legitimate reasons that are supported by substantial evidence." *Id.*

### A. Dr. Gomes

---

[2] The Social Security Administration has altered the regulation which governs the evaluation of medical evidence for claims filed on or after March 27, 2017. *Farlow v. Kijakazi*, 53 F.4th 485, 488 n.3 (9th Cir. 2022). This claim was filed on February 7, 2017, and so the older system applies. Tr. 14.

Plaintiff asserts that the ALJ erred by discounting the opinions of examining psychologist Dr. Manuel Gomes. On August 16, 2017, Plaintiff sought a psychological evaluation with Dr. Gomes. Tr. 529. This evaluation consisted of a single forty-eight-minute session with Plaintiff in which no prior medical records were provided for review. Tr. 529. Based on this interaction, Dr. Gomes provided an eight-page report documenting his assessment of Plaintiff. Tr. 529–35. Dr. Gomes concluded his report by noting Plaintiff "will not have difficulty" in performing "simple and repetitive tasks" but noted that her "difficulty with poor memory" will prevent her from performing "detailed and complex tasks." Tr. 534.

The ALJ noted several inconsistencies between Plaintiff's testimony and what was relayed to Dr. Gomes during his evaluation. Tr 529. An ALJ does not err by providing less weight to a medical opinion when that medical opinion relies on limited or inaccurate information. *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012). Dr. Gomes reported that Plaintiff explained that she stopped working as a bus driver in 2011 "because she had difficulty managing pain and had decreased tolerance for children's school bus behavior." Tr. 530. Plaintiff also told Dr. Gomes that she "always got along well with coworkers and not have any difficulties with supervision." Tr. 531. However, Plaintiff testified that she was terminated from her position after having an "inappropriate conversation" with a monitor on a bus. Tr. 42. Further, Dr. Gomes was provided no medical or mental health records to review and relied only upon Plaintiff's explanation of her symptoms and personal history. Because Dr. Gomes was not provided a sufficient medical background and based his opinions on

limited and conflicted information relating to Plaintiff's alleged disability, the ALJ did not err in giving limited weight to Dr. Gomes.

The ALJ also discounted the opinion of Dr. Gomes in part because his assessment was "based on his one-time 48-minute encounter" with Plaintiff. Tr. 24. An ALJ may reject "the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). A single forty-eight-minute psychological evaluation would not be considered adequate to justify a reliable assessment of Plaintiff. This is especially true when said evaluation that did not rely upon Plaintiff's previous medical records and was based partially on inaccurate information provided by Plaintiff. It was not error for the ALJ to discount his opinion based off the limited interaction Dr. Gomes had with Plaintiff.

### B. Dr. Ju

The ALJ gave "limited weight" to Dr. Winifred Ju, the State agency medical consultant that provided Plaintiff's psychological assessment. Tr. 23. Specifically, the ALJ found the "cognitive limitations proffered by Dr. Ju to be out of proportion to the claimant's subjective complaints, and the objective observations of Dr. Gomes and other treating or examining clinicians." *Id.*

On August 30, 2017, Dr. Ju provided a non-examining psychological assessment of Plaintiff. Tr. 71–80. Her conclusion was that Plaintiff has mental impairments relating to depression, anxiety, and attention deficit hyperactivity. Tr.

79. However, Dr. Ju's determinations are neither consistent with Plaintiff's testimony nor her treating physicians, including her own colleague. Tr. 82.

The ALJ did "afford weight" to Dr. Friedburg, the other State Agency Consultant that also provided a psychological assessment of Plaintiff. Tr. 23. An ALJ may discount medical opinion when contradicted or by providing specific and legitimate reasons. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). Dr. Friedburg concluded her assessment by stating that Plaintiff did not have a severe mental impairment after assessing her medical history, Plaintiff's self-reports, and the opinions of other experts. Tr. 72. Because Dr. Ju's assessment is contradicted by Plaintiff's testimony, her colleague, Plaintiff's subjective testimony, and other medical experts and their evidence, it was not error for the ALJ to discount her medical opinion.

On this record, the Court concludes that the ALJ has given adequate justification for discounting the medical opinion evidence of Drs. Gomes and Ju.

### III.  Lay Witness Testimony

Plaintiff also alleges that the ALJ erred by discounting the lay witness testimony of Plaintiff's ex-husband. "In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r, Soc. Sec.*, 454 F.3d 1050, 1053 (9th Cir. 2006). Specifically, an ALJ must consider lay witness testimony as to the severity of a plaintiff's symptoms. *Nguyen v. Charter*, 100 F.3d 1462, 1467 (9th Cir. 1996). The ALJ may discount lay witness testimony by providing "reasons that are germane to each witness." *Dodrill*

*v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). However, errors in assessing lay witness testimony are harmless when the witness's testimony matches the plaintiff's own testimony and the ALJ rejected the plaintiff's testimony for "well-supported, clear and convincing reasons." *Molina*, 674 F.3d at 1122.

The ALJ considered the lay witness testimony of Plaintiff's ex-husband through his submitted Adult Function Report. Tr. 24. The ALJ noted inconsistencies between the lay witness testimony and the record. *Id.* Specifically, the ALJ found Plaintiff's husband's claim that Plaintiff "could walk only two blocks before needing to stop and rest" inconsistent with both the record and Plaintiff's subject symptom testimony. Tr. 24. Further, the ALJ explained that "even if one accepts [Plaintiff's husband's] allegations are completely true, they do not describe symptoms or limitations so severe as to preclude the claimant from working at jobs" within Plaintiff's RFC. Tr. 24. Finally, Plaintiff's lay witness testimony largely mirrors her own testimony which, as discussion above, was discredited where related. Thus, the ALJ provided evidence that there was a germane reason to discount the lay witness testimony.

Based on the reasons above, the ALJ correctly discounted Plaintiff's lay witness testimony.

### IV. Lack of Severe Medical Impairment

Plaintiff alleges that the ALJ was incorrect in assessing her impairments as not severe. Specifically, Plaintiff contends that the ALJ improperly dismissed her "somatic symptom complaint, unspecified anxiety disorder, unspecified depressive

disorder, and unspecified ADHD as groundless." Pl.'s Br. [ECF 10] at 13. A "severe impairment" is any impairment or condition that significantly limits one's ability to perform work functions or activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). Here, Plaintiff has the burden of demonstrating the conditions that constituted a severe impairment that has existed for the statutory twelve-month period. 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505, 404.1509, 416.905, 416.909.

The ALJ noted that "because the claimant's medically determinable mental impairment caused no more than 'mild' limitation in any of the functional areas, it was non-severe." Tr. 18. As discussed above, the inconsistencies and contradictions between Plaintiff's testimony and her medical record cast doubt on the severity and intensity of her symptoms. The ALJ noted that Plaintiff herself was "unsure why she was undergoing a psychological evaluation" by Dr. Gomes because "the primary reason she was seeking disability was for physical issues." Tr. 22. Further, the ALJ explained that while Plaintiff had received medical attention for a variety of issues, none of these related to any mental illness. Plaintiff's testimony about her alleged mental conditions was also described in vague, "unspecified" terms. Tr. 43. For example, when asked by the ALJ if there were any other factors that prevented her from working Plaintiff replied she "didn't know honestly" and made no mention of ADHD or the other unspecified symptoms listed in her complaint. *Id.* Because of this lack of convincing evidence, the ALJ reasonably concluded Plaintiff was not severely impaired for the listed conditions raised by Plaintiff.

V.   **Vocational Analysis**

Finally, Plaintiff alleges that the ALJ incorrectly "relied on an incomplete hypothetical to the vocational expert" in making his determination that work exists in significant numbers in the national economy. Pl.'s Br. [ECF 10] at 18. Specifically, Plaintiff alleged that she would be absent for several days a month and that her tardiness would preclude employment. The ALJ bears the burden of proving substantial work exists in the national economy that can accommodate the plaintiff within their limitations. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). The ALJ may establish this proof by relying on Vocational Expert ("VE") testimony, job positions outlined and defined by the United States Department of Labor's Dictionary of Occupational Titles, and any evidence proffered at the plaintiff's administrative hearing. *Embrey v. Bowen,* 849 F.2d 418, 423 (9th Cir. 1988).

At her hearing, the ALJ asked the VE if Plaintiff would be able to work at the positions listed in his report. Tr. 51. The VE replied "yes," and explained that he took into consideration Plaintiff's RFC limitations. The RFC did not contain any limitations regarding necessary days off and Plaintiff has not demonstrated she has a disability that would require so many absences. Therefore, the ALJ did not err in relying on the VE and his testimony.

## CONCLUSION

For the reasons given above, I AFFIRM the Commissioner's decision and DISMISS this case with prejudice.

IT IS SO ORDERED.

DATED: 10/17/23

_____
MICHAEL W. MOSMAN
United States District Judge